### UNITED STATES of America

### v.

### COMMONWEALTH OF VIRGINIA et al.

### No. 76–0623–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 23, 1980.

J. Stanley Pottinger, Asst. Atty. Gen., Stephen Koplan, Wm. White, Jerry Keith, Daniel A. Searing, Washington, D.C., for plaintiff.

Leonard L. Hopkins, James E. Moore, Asst. Attys. Gen., Richmond, Va., for defendants.

## ORDER

WARRINER, District Judge.

This case comes before the Court on the plaintiff's Motion to Compel Discovery filed 30 July 1980. On 11 August 1980, the defendants filed their Response to the Motion to Compel Discovery, and issue was joined on the question whether in remanding this case the United States Court of Appeals for the Fourth Circuit intended that new evidence be taken regarding the special qualifications, if any, required for civilian positions. The plaintiff also seeks to reopen discovery to obtain new evidence relating to the general employment practices of the Virginia State Police since 1 July 1973.

### I.

This Court entered its final judgment on 24 July 1978. *See United States v. Commonwealth of Virginia*, 454 F.Supp. 1077 (E.D.Va.1978). In an opinion issued 17 April 1980, the Court of Appeals affirmed in part and reversed in part and remanded for further proceedings. *See United States v. Commonwealth of Virginia*, 620 F.2d 1018 (4th Cir. 1980). The Court of Appeals held, first, that the Title VII claims raised by the plaintiff were improperly dismissed before trial. *Id.* at 1022. This Court was therefore directed to analyze the charges of discrimination made by the United States under the appropriate Title VII standards. *Id.* at 1025. Consideration under Title VII, as the Court of Appeals noted, expands the time period under review since Title VII became applicable to State and local governments on 24 March 1972.

The plaintiff is entitled to present new evidence relevant to prove acts of discrimination in which the Virginia State Police may have engaged in the period between 24 March 1972 and 1 July 1973. The Court's pretrial ruling, which has now been held erroneous, may have foreclosed presentation of such evidence at trial.

It is highly unlikely that any such evidence was precluded at trial. The trial court freely admitted evidence proffered by plaintiffs of alleged discrimination going back to the origins of the Virginia State Police, and continuing up to, through, and after the fifteen-month period in question. However, such pre-1 July 1973 evidence was received by the Court as evidence of post-1 July 1973 discrimination. This intended limitation on the use of such evidence was known to counsel prior to trial. Thus it is conceivable that evidence of discrimination during the relevant period was withheld by counsel as being not worth the time, trouble, cost and effort of presenting it in view of the limitation imposed by the Court. *See United States v. Commonwealth of Virginia*, 454 F.Supp. at 1081.

In view of this state of affairs the Court will permit additional discovery and hear additional evidence on the period 24 March 1972 to 1 July 1973 provided counsel for plaintiff first file a statement with the Court that he consciously curtailed discovery and the proffer of evidence of discrimination during the relevant period because of the Court's prior ruling on the limited purpose to be served by such evidence.

Plaintiff also seeks extensive discovery of the hiring practices from 1 July

1973 to the present. The plaintiff is not entitled to discovery relating to the general hiring practice from 1 July 1973 to the time of the trial, which commenced on 9 February 1978. Because the plaintiff had an adequate opportunity to discover and document alleged acts of discrimination from 1 July 1973 through the close of the trial, and because the Court did not in any way restrict the plaintiff's presentation of such evidence at trial, the plaintiff will not be permitted to conduct re-discovery as to hiring practices for sworn positions during this time period. The matter of hiring for the civilian positions will be given separate consideration in this opinion.

■ There is also no basis for the plaintiff's discovery requests concerning employment practices of the State Police since 1 January 1977. The trial herein took place in February, 1978; thus the plaintiffs have previously had an opportunity to discover and present evidence as to approximately a year following 1 January 1977. To support their request for information as to post-trial employment practices, the plaintiff contends, in the Motion to Compel filed 30 July 1980, that information as to post-trial practices will be necessary to fashion a remedy should the Court find that the defendants have engaged in additional discriminatory practices. However, in the event that the Court makes such a finding, it can then be determined whether an inquiry should be made into the post-trial practices of the defendants and the need, if any, for a remedy for discrimination. At this time, the Court finds that information as to the post-trial practices is not necessary or relevant. The plaintiff will therefore not be permitted to conduct discovery into post-trial practices.[1]

## II.

In its decision, the Court of Appeals also held that this Court improperly failed to consider two separate claims under applicable Equal Employment Opportunity Commission guidelines. 620 F.2d at 1024. It is stated in the appellate decision that "the district court declined to apply the EEOC guidelines applicable to the possible discriminatory nature of the written examinations." *Id.* at 1022. This Court was further directed to consider under the appropriate guidelines the charge that the background investigations of Virginia State Police applicants served as a pretext for eliminating black applicants. *Id.* at 1024.

As a matter of fact, the EEOC guidelines were considered with respect to the written examination and Federal Agency Guidelines as to the background investigation claims. The Court specifically so stated in its opinion. 454 F.Supp. at 1101, 1103. The Court wrote in its earlier decision that it relied on evidence from two experts who testified, after reviewing the test criteria, the EEOC guidelines, and the statistical evidence, that the written test was a valid predictor of training school performance. *Id.* at 1101. The Court also discussed the applicability of the Agency guidelines to the background investigation claim, and it was found that the selection rate set by the guidelines as an indicator of discrimination could not be given great weight because the sample of blacks who underwent background investigations was relatively small. *Id.* at 1103. The background investigation claim was reviewed based on all of the evidence presented by the plaintiff, including over 20 case studies of hiring decisions, and the claim was found to be without merit.

Consistent with the instructions of the Court of Appeals, however, the Court will re-examine the evidence, hear additional argument, and will render more specific findings as to the impact of the EEOC guidelines on the claims in issue. In making its findings, the Court will consider any new evidence the plaintiff presents to prove a pattern or practice of discrimination between 24 March 1972 and 1 July 1973.

## III.

The Fourth Circuit decision also requires reconsideration of the allegation that the

---

1. Extensive reports requested by plaintiff in the order entered by the Court have been filed by defendant and are, of course, available to plaintiff.

Commonwealth discriminated against black applicants for civilian positions with the State police. The Court of Appeals instructed the Court as follows:

Upon remand the parties and the court should address themselves to each civilian job classification in the State Police to determine which positions, if any, require special qualifications, and, based upon this threshold determination, the appropriate statistical proof required under *Radiator Specialty*.

620 F.2d at 1025. The Court of Appeals returned to this point in its conclusion: "As we have noted, the United States should also be permitted to develop further the statistical data bearing upon the alleged discrimination against black applicants for civilian positions." *Id.*

The plaintiff reasonably maintains that the Court of Appeals has ordered this Court to reopen the litigation in order to allow the introduction of additional statistical evidence. The defendants, on the other hand, argue that the Court of Appeals merely directed the Court to reconsider the evidence and its decision in light of the intervening decision in *EEOC v. Radiator Specialty Co.*, 610 F.2d 178 (4th Cir. 1979). The defendants submit further that the Court's original decision is exactly correct under *Radiator Specialty*, so that the Court can, in quick order, reinstate its holding on this point. If this were true, though, there would have been no need for the reversal. The Court is left to conclude that the Court of Appeals in fact contemplates the reopening of the evidence. In effect a "new trial" of sorts on the specific issue has been mandated.

This conclusion is unsettling to the Court. At trial, both parties were allowed to introduce all of the evidence they had amassed relating to the hiring of personnel for civilian positions. No evidence was excluded. Furthermore, the Court made no ruling during the course of the trial as to the burden of proof, so that no party can claim that his perception of the proof requirements was affected by a decision of the Court. In short, this aspect of the trial was error-free.

The Court's error came only after trial when it evaluated the evidence which had been introduced. The defendant was not properly held to its burden of proving that special qualifications were required for certain civilian positions. Instead, the Court itself undertook to divide all of the civilian positions into skilled or unskilled positions, based entirely on the job title. 454 F.Supp. at 1089–1093. The Court acknowledged that it had little confidence in its speculations about the actual nature of the positions because the record did not contain job descriptions for any of the positions. 454 F.Supp. at 1092.

In *EEOC v. Radiator Specialty Co.*, 610 F.2d 178 (4th Cir. 1979), decided after this Court's ruling, the Court of Appeals discussed the approach a court should follow in evaluating the existence or non-existence of special job qualifications. The Fourth Circuit stated, first, that in certain cases, the fact that no special qualifications are needed for a particular job will be evident as a matter of law. In those cases, general population statistics offered by the plaintiff are adequate to establish a *prima facie* case of discrimination. On the other hand, in certain cases, it will be evident as a matter of law that special qualifications are required. Where this is true, specially qualified market statistics are usually necessary to demonstrate discrimination in hiring. *Id.* at 185.

The last category of cases outlined by the Fourth Circuit are those in which "it will not be manifest as a matter of law simply from plaintiff's identification of job positions whether or not special qualifications exist for them." *Id.* The burden is upon the *defendant* in these cases to establish the requirement of special qualifications. If the defendant succeeds in meeting his burden of proof "the plaintiff should have an opportunity to adjust his statistical proof base with the special qualifications found required." *Id.* But it is emphasized in the *Radiator Specialty* decision that a defendant who attempts to show the existence of special job qualifications is "at peril of hav-

ing the general population statistics presumed appropriate" in the event he fails to meet his burden of proof. *Id.*

Under the standards of proof set in *Radiator Specialty* the Court could readily accept a finding that it went too far in attempting to make some sense of the proof offered by the parties on the special job qualifications issue. Since it is the defendant's burden to establish its claim that special qualifications exist where that contention is not obvious on its face, the Court should only have separated out the positions which, as a matter of law, require special qualifications as well as those which, as a matter of law, do not. Doubts as to the nature of any positions should have been resolved against the defendant, it being the party with the burden of proof.

And yet the Fourth Circuit indicates that such a reading of its opinion would be incorrect. It appears to direct the Court accept new evidence in order to determine which positions require special qualifications. The mandate is at odds with the procedural understanding expressed in *Radiator Specialty*. After setting the standards of proof which govern in employment discrimination cases, the Fourth Circuit in *Radiator Specialty* commented on a procedural problem inherent in the method of proof selected. It is well worth setting out in the record a large portion of that discussion:

> A practical awkwardness at this stage of the increasingly elaborate proof scheme being worked out for Title VII should be frankly noted. As has generally been recognized, these proof schemes are aimed more at defining the appropriate mode of analysis of the proof after all the evidence has been adduced in the Title VII bench trial, than at prescribing the sequential order of proof by litigants. A plaintiff attempting to establish his *prima facie* disparate impact case by statistical proof using general population statistics has no means under general procedural rules to force during the bench trial itself a judicial ruling on the appropriateness of the statistics . . .

As a result, a plaintiff may learn only upon the filing of findings of fact or conclusions of law in the trial court, or even only after appeal, *see, e. g. Hill v. Western Elec. Co.*, [4 Cir.] 596 F.2d [99] at 106, that his *prima facie* case has failed because general population statistics were not appropriate. While an opportunity to reopen proof using appropriate statistics might, of course, be accorded even at these late stages, it would be by an exercise of grace. The obvious practical answer to this awkwardness is the judicious use of discovery and other pre-trial procedures to identify this as an issue of fact or law requiring timely resolution in the trial court.

610 F.2d at 185, n. 8.

The Fourth Circuit's view of the procedural problem is instructive because it acknowledges that cases may be won or lost simply because one party failed to analyze its burden of proof under the correct category of the cases outlined in *Radiator Specialty*. The Fourth Circuit further noted that the procedural option of reopening testimony is left to the discretion of the trial court. In *Radiator Specialty*, the Court of Appeals suggested that "the [trial] court may find it necessary to reopen the record and receive further evidence from both parties regarding the actual character of the jobs in question," but it did not order the trial court to do so. *Id.* at 186.

Following the trial in this case, the Court was all too aware that the proof offered was deficient in several respects. The defendants' proof of the specialized nature of certain positions, as has been discussed, was inadequate or non-existent. In a separate aspect of the case, the evidence on the relevant labor market and applicant-flow for trooper positions failed to support valid comparisons and the plaintiff's standard deviation analysis was rejected as meaningless. 454 F.Supp. at 1096–1099.

When the Court reviewed the evidence on hiring for trooper positions, it expressly considered and rejected the option of reopening the evidence. *Id.* at 1096–1097, n. 10. The Court briefly reviewed the import

of the decision in *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). The Court found that *Hazelwood* was premised upon the Supreme Court's concern that an erroneous interpretation of the law by the district court may have influenced the development of the defendants' proof. In the present case, however, this Court had not limited in any way the proof offered on hiring practices for trooper positions, and so it decided not to reopen the evidence. As set forth in the opinion:

> [The Court] has determined to follow the ancient and well-established rule of procedure regarding the presentation of evidence. Both parties having been given adequate time to prepare for trial, there having been no restriction upon the presentation of the population data, and both parties having rested their respective cases, the parties are entitled to a decision on the record made. To do otherwise would convert a trial into a yo-yo—sending it back for another twirl whenever a lapse in the proof appeared.

454 F.Supp. at 1096–1097, n. 10.

The Court of Appeals apparently concurred with this reasoning on the trooper position issue, for it did not direct that the plaintiff be given an opportunity to rework its statistical deviation analysis. But at the same time the Court of Appeals has ordered this Court to permit the United States "to develop further the statistical data bearing upon the alleged discrimination against black applicants for civilian positions." 620 F.2d at 1025.

The Court of Appeals' opinion does not explain why the parties are entitled to present new evidence consequent upon this Court's error in analyzing evidence *after* completion of the trial. If the question comes down to the parties' respective burdens of proof, as it appears to from a reading of *Radiator Specialty*, then the Court can properly re-allocate the burdens and reach its decision on remand without taking additional evidence.

Faced with this dilemma and in order to better understand the mandate, the Court requested the parties to submit briefs addressing the circumstances under which a Court of Appeals *can* direct that additional evidence be taken on remand. The plaintiff contends that the Court of Appeals can order the taking of additional evidence under any circumstance, regardless of whether the trial court has made an error affecting the admission of evidence. The defendants argue that where, through no error on the part of the trial court, a party fails to adduce relevant evidence at trial, appellate courts should not permit that party to bolster its case on remand.[2]

## IV.

■■ The rule is well-established that, in the absence of error affecting the introduction of evidence at trial, the decision whether to reopen the evidence at a later stage of the proceedings rests with the trial judge. *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 572, 63 S.Ct. 332, 337, 83 L.Ed. 460 (1943); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971).[3] It is equally well-established that a party who fails to introduce at trial all evidence necessary to obtain judgment has generally made a fatal error. *See, e. g., Castaneda v. Partida*, 430 U.S. 482, 497–500, 97 S.Ct. 1272, 1281–1283, 51 L.Ed.2d 498 (1977); *Dothard v. Rawlinson*, 433 U.S. 321, 331, 97 S.Ct. 2720, 2727–2728, 53 L.Ed.2d 786 (1977); *Garrett v. Louisville & Nashville Railroad Co.*, 235

---

**2.** There is a certain incongruity about these arguments. In effect, the plaintiff urges that the defendants be granted a second chance to meet their burden of showing that civilian positions require special qualifications. The defendants disdain the opportunity to introduce evidence which, as has been seen, may be critical to their special qualifications claim. They would, apparently, sacrifice themselves on the altar of procedural integrity.

**3.** *See also Gormley v. United States*, 167 F.2d 454 (4th Cir. 1948); *see generally*, 6A J. Moore, *Federal Practice* ¶ 59–.04[13] at 36–37 (2d ed. 1974).

U.S. 308, 313, 35 S.Ct. 32, 33, 59 L.Ed. 242 (1914).[4]

In combination, these rules limit the authority of Courts of Appeals to order the taking of new evidence on remand. "A cause is not ordinarily remanded for the purpose of giving a party an opportunity to supply a deficiency in his evidence." *Moses Lake Homes, Inc. v. Grant County*, 276 F.2d 836, 853 (9th Cir. 1960).

The Supreme Court's decision in *Garrett v. Louisville & Nashville Railroad Co., supra,* illustrates the force with which these rules have been applied. In *Garrett,* the plaintiff failed to offer any evidence of pecuniary loss to parents upon the death of their adult son. The Supreme Court found, based on its own decisions rendered after the trial in question, that proof of pecuniary loss was a necessary element of the plaintiff's case. 235 U.S. at 312, 35 S.Ct. at 33. At the close of his consideration of the case, Justice McReynolds noted:

> The request is now made that in view of all the circumstances, especially the former undetermined meaning of the statute [creating the cause of action,] this court remand the cause for a new trial upon the declaration being so amended as to include the necessary allegation. But we do not think such action would be proper. The courts below committed no error of which just complaint can be made here; and the rights of the defendant must be given effect, notwithstanding the unusual difficulties and uncertainties with which counsel for the plaintiff found himself confronted.

*Id.* at 313, 35 S.Ct. at 33. The judgment previously entered against the plaintiff, consequently, was affirmed.

Moreover, in *Walling v. Jacksonville Paper Company*, 317 U.S. 564, 63 S.Ct. 332, 83 L.Ed. 460 (1943), the Court indicated that where a district court improperly interpreted and applied the controlling law in the case but did not restrict the introduction of evidence relevant to that point of law, "whether additional evidence must be taken [on remand] ... is a question for the District Court." *Id.* at 572, 63 S.Ct. at 337. In *Walling,* the district court originally held that employees of warehouses where goods were received from out of State, stored, and then sold within the State were not engaged in interstate commerce. This judgment was reversed on appeal. *Fleming v. Jacksonville Paper Co.,* 128 F.2d 395, 398–399 (5th Cir. 1942). The Court of Appeals remanded the cause "for such modification of the findings as ought to be made...." *Id.* at 399. The Supreme Court then saw fit to clarify the mandate by noting that the district court should determine for itself whether any additional evidence was required to effectuate the mandate. 317 U.S. at 572, 63 S.Ct. at 337.

The Supreme Court, furthermore, has held in several recent cases that the parties must bear the risk if they fail to introduce all evidence necessary to support their claims. In *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), for example, the Court affirmed a finding of discrimination because the plaintiff had established a prima facie case and "[i]nexplicably, the State introduced practically no evidence." *Id.* at 498, 97 S.Ct. at 1282. Justice Blackmun, writing for the majority, cautioned against an overly broad reading of the decision: "We emphasize, however, that we are not saying that the statistical disparities proved here could never be explained in another case; we are simply saying that the State did not do so in this case." *Id.* at 499, 97 S.Ct. at 1282.

In *Dothard v. Rawlinson,* 433 U.S. 321, 97 S.Ct. 2720, 53 L.Ed.2d 786 (1977), the Court upheld a finding that hiring practices of the Alabama Board of Corrections violated Title VII. *Id.* at 331–332, 97 S.Ct. at 2727–2728. Chief Justice Burger and Justice Blackmun joined Justice Rehnquist in a separate opinion concurring in the result in which Justice Rehnquist stated that the finding of discrimination in *Dothard* was "dictated by the peculiarly limited factual and legal justifications offered by [the de-

---

4. *See also Hennessy v. Schmidt,* 583 F.2d 302, 307 (7th Cir. 1978); *Skehan v. Board of Trustees of Bloomsburg State College,* 590 F.2d 470, 478–479 (3d Cir. 1978).

fendants at trial.]" *Id.*, 433 U.S. at 337, 97 S.Ct. at 2731. Justice Rehnquist went on to suggest arguments that, if presented by the defendants, might have proven persuasive. *Id.* at 339–340, 97 S.Ct. at 2731–2732. But Justice Rehnquist stressed that the time to present evidence rebutting the claim of discrimination is at trial:

> If the defendants in a Title VII suit believe there to be any reason to discredit plaintiffs' statistics that does not appear on their face, the opportunity to challenge them is available to the defendants just as in any other lawsuit. They may endeavor to impeach the reliability of the statistical evidence, they may offer rebutting evidence, or they may disparage in arguments or in briefs the probative weight which the plaintiffs' evidence should be accorded.

*Id.* at 338–339, 97 S.Ct. at 2731.

Justice Stewart, in the majority opinion in *Dothard*, made the same assessment of the defendants' burden to present adequate rebuttal evidence in a Title VII action:

> The plaintiffs in a case such as this are not required to exhaust every possible source of evidence, if the evidence actually presented on its face conspicuously demonstrates a job requirement's grossly discriminatory impact. If the employer discerns fallacies or deficiencies in the data offered by the plaintiff, he is free to adduce countervailing evidence of his own. In this case no such effort was made.

*Id.* at 331, 97 S.Ct. 2727–2728. Thus, the procedural understanding in *Dothard*, con-. sistent with the lines of authorities reviewed above, is that the parties, absent error on the part of the Court, have but one opportunity to present evidence supporting their respective positions.

In arguing before this Court that the Fourth Circuit panel properly ordered the taking of new evidence, the plaintiff relies principally upon *Hazelwood School District v. United States*, 433 U.S. 299, 97 S.Ct. 2736, 53 L.Ed.2d 768 (1977). The plaintiff maintains that the Supreme Court in *Hazelwood* directed the district court to take additional

evidence even though there was no finding that the district judge had limited the introduction of evidence in any manner at trial. According to the plaintiff, *Hazelwood* thus can serve as precedent for ordering the taking of additional evidence in this or any case. This position must be considered closely, however, for the Court of Appeals certainly did not cite *Hazelwood* as its authority for providing the parties a second opportunity to establish their respective claims.

In *Hazelwood*, the Supreme Court vacated a judgment of the United States Court of Appeals for the Eighth Circuit and remanded the case with instructions that the defendant be permitted to reopen its case to introduce additional evidence. *Id.* at 313, 97 S.Ct. at 2744. The facts giving rise to the *Hazelwood* decision are adequately summarized in this Court's original opinion. 454 F.Supp. at 1096. It is necessary to note further only that the remand for taking additional evidence in *Hazelwood*, in the opinion of the majority, was premised on the Supreme Court's finding that "the District Court's comparison of *Hazelwood's* teacher work force to its student population fundamentally misconceived the role of statistics in employment discrimination cases." 433 U.S. at 308, 97 S.Ct. at 2742. Justice Brennan, concurring in the *Hazelwood* decision, specifically stated that remand for the taking of additional evidence was justified only because "the District Court had adopted a wholly inappropriate legal standard of discrimination...." *Id.* at 313, 97 S.Ct. at 2744.

The *Hazelwood* decision cannot stand for the proposition that an appellate court has authority to order the taking of additional evidence when, for whatever reason, it is dissatisfied with the proof offered by the parties at trial. Rather, *Hazelwood* must be viewed as an "error" case; that is, a case where the trial judge's misunderstanding of the law materially affected the introduction of evidence and thus made it necessary to reopen the evidence on remand. The plaintiff's interpretation of *Hazelwood* is rejected because it is not supported by a careful

reading of the case. Further, the plaintiff's interpretation of *Hazelwood* is impossible to reconcile with the well-established rules of procedure governing the presentation of evidence that were clearly relied upon in *Dothard v. Rawlinson, supra*—a decision rendered the same day as *Hazelwood* and, like *Hazelwood*, authored by Justice Stewart.

The Fourth Circuit decision in this case does not specify, and the Court fails to perceive, the error on its part which affected the introduction of evidence at trial and which would therefore justify reopening the evidence as in *Hazelwood*. As discussed earlier in this opinion, an error of analysis was obviously made in allocating the burden of proof on the special qualifications issue. Following the trial, but before the Fourth Circuit's decision in *Radiator Specialty Co., supra*, the Court was called upon to analyze the proof offered on the claim that the Virginia State Police discriminated in hiring civilian employees. The plaintiff relied on general population statistics to support its claim of discrimination. The defendants attempted to rebut this evidence by claiming that the civilian positions required special qualifications. Neither the plaintiff nor the defendants submitted a breakdown of the responsibilities for each civilian position to substantiate the need for special qualifications.

Faced with deficient proof as to the actual need for special qualifications, the Court divided the positions into skilled and unskilled positions as best it could, but it acknowledged that the division was to an appreciable extent speculative. 454 F.Supp. at 1091–1092. The Court ultimately, and erroneously, held that the plaintiff bore the burden to establish discrimination by comparing the hiring statistics for special qualification positions with population statistics encompassing only those persons who possessed the necessary qualifications. The plaintiff having failed to meet this burden, the Court ruled in favor of the defendants on the civilian positions issue. *Id.* at 1092.

The Fourth Circuit has now declared that general population statistics should be accepted in any case where it is not appar-ent as a matter of law or a matter of fact that special qualifications are required for the specific positions under scrutiny. *EEOC v. Radiator Specialty Co., supra* at 185. The burden is thus on the defendants to demonstrate that special job qualifications undercut the validity of general population statistical comparisons where that contention is not evident as a matter of law. By failing to anticipate this allocation of burdens the Court clearly erred in its original decision. But it was an error made well after trial. The Court did not express before or during the trial its view regarding the burden of proof. The parties therefore could not have relied upon statements or rulings made by the Court when they evaluated the measure of proof necessary to sustain their respective claims. Therefore, while the Court may have misconceived the burden of proof, this did not materially affect the introduction of evidence at trial. If the Court had its usual discretion to grant or deny a motion to take additional evidence, the motion would be denied for the reasons given when the Court first considered reopening the evidence after trial. 454 F.Supp. at 1096–1097 n. 10.

The Court does not have such discretion because the Fourth Circuit opinion mandates a reopening of the evidence. As mentioned previously, the appellate decision in this case does not point to an error on the part of the Court which justifies the taking of additional evidence. However, the Fourth Circuit, in a subsequent decision, *Patterson v. American Tobacco Company*, 634 F.2d 744 (1980) (en banc) [hereinafter cited as *Patterson III*], has set forth its justification for reopening the evidence under circumstances similar to those presented in this case.

The trial judge in *Patterson* held that the defendants therein had engaged in discriminatory employment practices. The trial judge's finding of discrimination was originally upheld on appeal to the Fourth Circuit. *Patterson v. American Tobacco Company*, 535 F.2d 257 (4th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 314, 50 L.Ed.2d 28 (1976). The case was remanded, however,

for the granting of modified relief. The modified relief was granted on remand prior to the Supreme Court's decision in *Hazelwood School District v. United States, supra. Patterson III*, at 746.

After the entry of the modified judgment, the defendants moved for relief from judgment under Fed.R.Civ.P. 60(b). They argued that the *Hazelwood* decision and also *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *United Airlines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) constituted significant intervening changes in the law. The district court denied the Rule 60(b) motion. *Patterson III*, at 746. The Court of Appeals reversed, holding that reconsideration on a reopened record was necessary as a result of both the *Hazelwood* and *Teamsters* decisions. *Id.* at 747–750, 747–754.

For the purposes of this decision, the Court need focus only on that portion of *Patterson III* which discusses the impact of *Hazelwood*. The trial judge in *Patterson* found discrimination in appointments to supervisory positions, based entirely on general population statistical comparisons. *Id.* at 751. The defendants offered rebuttal evidence consisting of (1) statistical data showing the percentage of women and blacks categorized as "supervisors" in the SMSA figures compared with the percentage of blacks and women employed in supervisory positions by the defendant, American Tobacco Company; and (2) statistical data showing the overall course of American Tobacco Company's appointments to vacant supervisory positions since the effective date of the Act. *Id.* at 752. The Fourth Circuit concluded that the trial judge gave insufficient consideration to this rebuttal evidence:

While the record is not wholly clear on the point, we are persuaded that the district court gave little, if any, consideration to these elements of the defendants' proof, presumably for the very reason that *Hazelwood* had not then made plain their great importance in assessing proof of discrimination in this type case.

*Id.*

Accepting that *Hazelwood* worked a significant change in the law, thereby justifying reconsideration of the original decision in *Patterson*, the need for taking additional evidence is not at all apparent. The *Patterson III* opinion discloses that the defendants were allowed to introduce all of their rebuttal evidence on special qualifications. *Id.* The Fourth Circuit's objection is that the trial judge did not give the evidence the weight to which it is entitled under *Hazelwood*. Surely, the trial judge could now reevaluate the arguments made by the defendants on the basis of the existing record, for the defendants understood at the time of trial that the case could be won or lost on the special qualifications issue. They had no incentive to hold back on their presentation of evidence. It also cannot be presumed that the plaintiffs refrained from raising any available challenge to the defendant's proof.[5]

In any event, and regardless of the correctness of the result in *Patterson III*, the present case is distinguishable because the trial herein took place a full seven months after the decision in *Hazelwood*. At the time of trial, the plaintiff and the defendants were—or should have been—thoroughly familiar with the holding in *Hazelwood* regarding special job qualifications. Neither side could have assumed that the plaintiff's general population statistics were unassailable. Indeed, the Virginia State Police defended on the ground of special

---

5. The Fourth Circuit's order to reopen the evidence in *Patterson III* and in this case calls to mind the decision in *EEOC v. Chesapeake & Ohio Ry. Co.*, 577 F.2d 229 (4th Cir. 1978). In *EEOC v. Chesapeake & Ohio Ry. Co.*, the Court of Appeals required this Court to "explore" the circumstances underlying a statement made by a witness in the course of his testimony at trial,

in order to determine whether there existed an individual claim of discrimination. *Id.* at 233. The Court found, upon further inquiry, that the testimony presented by the witness had been closely scrutinized and understood by the counsel at trial, who rightly found no need to explore it further than they did. *EEOC v. Chesapeake & Ohio Ry. Co.*, 457 F.Supp. 674, at 677.

qualifications. But inexplicably, neither the Commonwealth nor the United States introduced evidence of the specialized nature of the civilian positions in question.

Thus, if reopening the evidence in this case is to be premised upon an intervening change in the law, that change must have been effected by *Radiator Specialty Co.*, *supra*. The Fourth Circuit, in *Patterson III*, states that *Radiator Specialty* in fact constituted a significant change in the law. The Court of Appeals explained the erroneous application of the general population statistics in *Patterson* by stating that "in the pre-*Hazelwood* setting" the district court and the Court of Appeals "simply assumed the appropriateness of using plaintiff's general population and general work force statistics...." *Patterson III*, at 752. However, the Court of Appeals also sought to account for the possibility that the district judge had considered and expressly rejected the defendants' contention that special job qualifications existed. In the view of the Court of Appeals, if the trial judge had rejected the contention, his ruling could not stand since

> [t]he question whether special qualifications in the *Hazelwood* sense did or did not exist for these positions could not be resolved as a matter of law on the basis of the opposing parties' bald conflicting assertions, nor by looking simply to the manifest nature of the positions, but required a factual inquiry whose necessity was not then realized. *See EEOC v. Radiator Specialty Co.*, 610 F.2d at 178.

*Patterson III*, at 752.

The Court of Appeals suggests that, until *Radiator Specialty*, trial courts did not appreciate the need for a factual inquiry into the precise nature of the positions for which special qualifications are claimed to exist. Whether this is actually true of *any* trial court, it is certainly not true of this Court. When the civilian position issue was taken up, the Court fully recognized the need for detailed job descriptions for most of the positions listed. Unfortunately, neither party undertook to provide job descriptions. Under these circumstances, and finding

that the plaintiff had the burden of proof on the issue, the Court rejected the plaintiff's general population analysis. 454 F.Supp. at 1090–1091.

*Radiator Specialty Co.* did not introduce any substantially new element into the law of employment discrimination. After *Hazelwood*, the parties knew that proof as to special qualifications could undermine general population statistics. This Court felt that the plaintiffs should bear the burden in the first instance to develop statistical data reflecting that portion of the population capable of performing the specific job with no training or very little training. With this prerequisite for a prima facie case, the defendants' burden to prove that they had not discriminated would be minimized.

The Fourth Circuit held in *Radiator Specialty* that the defendant must show the inappropriateness of general population statistics. In a footnote, the Court of Appeals indicated that in so allocating the burden it had followed "the general principle of allocation of proof to the party with the most ready access to the relevant information." 610 F.2d at 185 n. 8. The allocation of the burden of proof was characterized as a newly refined principle which was to be fitted into the "increasingly elaborate proof scheme being worked out for Title VII litigation," but it was recognized that "these [Title VII] proof schemes are aimed more at defining the appropriate mode of judicial analysis of the proof after all the evidence has been adduced in the Title VII bench trial, than at prescribing the sequential order of proof by litigants." *Id.*

This being the case, the Court sees no reason to reopen the evidence here. The parties were allowed to offer all their evidence on the point at trial. The Court can now allocate the burden consistent with *Radiator Specialty* and determine the extent of the showing of discrimination.

The parties should not be permitted to present additional evidence since the Court did not make an error of law which deprived either party of the opportunity to present his case. Consistent with *Garrett v. Louisville & Nashville Railroad Co.*, *supra*,

and also *Dothard v. Rawlinson* and *Castaneda v. Partida*, the parties are entitled to a decision on the record made.

■ Despite this Court's dissatisfaction with the order to reopen the evidence on the civilian position issue, the Fourth Circuit's mandate must and will be fully effectuated. *See Briggs v. Pennsylvania Railroad Co.*, 334 U.S. 304, 306, 68 S.Ct. 1039, 1040, 92 L.Ed. 1403 (1948); *Crane Co. v. American Standard, Inc.*, 490 F.2d 332, 341 (2d Cir. 1973). Accordingly, the Court holds that the plaintiff's discovery requests which concern the civilian positions are properly made and must be answered by the defendants.

### V.

In summary, discovery may proceed as to the following matters:

1. The employment practices of the Virginia State Police between 24 March 1972 and 1 July 1973;

2. The existence or non-existence of special qualifications for the civilian positions set forth in the Court's original opinion at pages 1091–1092;

3. The hiring practices of the Virginia State Police with respect to civilian positions, up to and including the time of trial.

All other requests for discovery are beyond the scope of this litigation, and the defendants' objections are SUSTAINED as to these matters.

And it is so ORDERED.