**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Jerri C. LEWIS, Defendant–Appellee.**

No. 87–1001.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 16, 1987.

Decided Dec. 11, 1987.

Jeffrey W. Lawrence, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellant.

Barry J. Portman, Federal Public Defender, San Francisco, Cal., for defendant-appellee.

Before CHOY, ALARCON and O'SCANNLAIN, Circuit Judges.

ALARCON, Circuit Judge:

The government appeals from the district court's order suppressing a confession on motion of defendant Jerri C. Lewis (Lewis) in this bank robbery prosecution. We reverse.

The factual issues concerning the motion to suppress were submitted to the court in the declarations filed by each party. The district court stated at the hearing on the motion to suppress that it would resolve all controverted facts in favor of the government for purposes of its ruling. The district court concluded "[j]ust on the basis of the facts as put forward in the government's memorandum and affidavit, that the first statement was not knowing and voluntary." The court also stated that it had reviewed the facts "in the light most favorable to the government." Ordinarily, we review conflicting evidence in the light most favorable to the prevailing party in the district court. Here, however, the district court stated it was "discounting" the defendant's claims about what was said to her by the agents and was "just going on the basis of what is in the agent's papers." Our task then is to determine whether the district court's oral findings are supported by the evidence presented in the declaration submitted by the government.

## STATEMENT OF FACTS

A. *Evidence Produced by the Government*

On October 10, 1986, Michael E. Degnan, a Special Agent of the Federal Bureau of Investigation (Degnan), identified Lewis as the person depicted in photographs taken during the robbery of a bank on October 9, 1986. Degnan recognized Lewis because he had been the case agent in a prosecution wherein she was charged and convicted of bank robbery. Lewis was arrested on October 20, 1986.

On October 21, 1986, Degnan and Special Agent Fujita went to the prison ward of the San Francisco General Hospital to interview Lewis. When the agents arrived, they learned for the first time from the hall nurse that Lewis had just returned from surgery for removal of an abscess on her left shoulder caused by the injection of narcotics. The nurse granted them permission to see Lewis. The agents decided to enter and tell her that they had come to interview her but would return the next day because she had just undergone surgery.

Lewis was asked if she remembered Degnan. She replied that she did. Agent Fujita then inquired whether Lewis knew him. She replied that he was "the individual who couldn't run." On October 15, 1986, Agent Fujita had attempted to catch up with Lewis.

Lewis appeared to be in pain. Special Agent Degnan remarked: "you look kind of rough." He asked her how she was feeling. She replied: "O.K."

Degnan told her that they had come to talk to her upon learning that she had finally been arrested. Degnan advised her that he had found out that she had just come out of surgery. Lewis was told that the agents would come back the next day to talk to her about the robberies. Degnan asked her whether she was going to "come clean." Lewis said that she would. Degnan asked her how many they would talk

about. She responded, "three." Degnan asked her about the number of robberies to find out if she had committed more than those known by the authorities. If Lewis had stated that she had committed additional robberies, they would have searched their files prior to the interview the next day. The entire period of time spent with Lewis was approximately two minutes.

The agents returned the next day, October 22, 1986, to the hospital prison ward to question Lewis. The hall nurse informed them that Lewis was alert and not under any medication which would affect her ability to be interviewed. Lewis appeared to be alert and looked much better than she had the day before. Agent Degnan asked her how she was feeling. She stated "okay."

Special Agent Fujita informed her that before she could be interviewed, they had to advise her of her rights. He gave her a copy of the FO 395 Advice of Rights and Waiver Form to read along with him. He then read the form to her. She signed the form to indicate that she waived her right to counsel and was willing to make a statement and answer questions. She also acknowledged by her signature the fact that "[n]o promises or threats have been made to me and no pressure or coercion of any kind has been used against me."

Lewis initially admitted committing three robberies, two of the same bank. As the interview progressed, Special Agent Fujita showed her a photograph of the New Montgomery Street bank robbery. She stated that this photograph was not very good and then requested that she be shown the other photographs. She was then shown a photograph of the October 9, 1986 bank robbery and stated that these photographs were not very good and she would consider taking the case to trial. No reference was made to her statements of the previous day during this conversation.

### B. *Personal Observations of the Court*

Lewis filed a motion to suppress the statements she made on October 21, 1986 and October 22, 1986. She argued in her memorandum of points and authorities filed in support of her motion that her October 21, 1986 statement was involuntary because she was a "heroin addict suffering from the effects of drug withdrawal [and] was questioned in her hospital bed hours after she had awakened from a general anesthetic administered during surgery." She also claimed that suppression of the October 22, 1986 statement was compelled because it was obtained through "exploitation of the involuntary admission made the previous day."

The court scheduled argument on the motion to suppress the statements for December 18, 1986. Prior to hearing argument on that date from counsel, the court stated that "the first statement was not knowing and voluntary." Before stating its conclusion that the confession was involuntary, the court said: "Now, anybody that has ever been under a general anesthetic following an operation knows that as you come out of a general anesthetic you are not accountable for what you say and do."

After advising the parties of its view of the facts and the law, and prior to hearing from counsel, the court explained: "[N]ow that is my reaction to the facts before me." The court then commented: "I will be glad to hear ... any *evidence* that anybody wants to present whenever the defendant appears." (Emphasis added).

Lewis' counsel advised the court he was "prepared to submit, in view of your honor's comments...." The court then permitted the Assistant United States Attorney to speak. The government counsel began his argument by stating that the evidence contained in Degnan's declaration showed that during the first statement on October 21, 1986, Lewis "was at the time aware of what was going on and was able to talk to the agents." The court interrupted the prosecutor's argument regarding the legal effect of the brief conversation on October 21, 1986, on the admissibility of the confession obtained the following day, to inquire whether it was his contention that the earlier statement was voluntary or involuntary. The prosecutor replied: "My contention is that the first statement was

voluntary." The court then made the following comment:

> Well, you see, I can't go with you on that. One of the reasons why, and I am frank to say, I am influenced by personal experience. I mean, I represent to you that I have never been a heroin addict and I have never experienced what it is like to come out from under heroin, but I have come out from under an anesthetic. And people have told me that—and I seem to be perfectly all right—and people have told me that I said the most incredible things during the few first six hours or so after I came out of a general anesthetic. And I have had the same experience related by other people.
>
> You are not accountable for what you do or say for quite a number of hours after you come out of a general anesthetic. So I cannot find that a person who is both withdrawing from heroin and coming out from under a general anesthetic and is under arrest and confronted by FBI agents is in a position to make a voluntary and knowing statement at that time.

Later in the hearing the court observed:

> As I said, I think that when agents go into the hospital room of a woman who is coming out from heroin and coming out from a general anesthetic and asks a question on the merits, whether you call it trick or whatever, they are taking advantage of her. They should have never asked the question. It was a clear case of not asking. And I think it was an abuse of the proper procedures in this case. And so I am not saying it was coerced. But I think it was abusive and clearly improper. And I would have to, therefore, treat the first statement as having been voluntary—involuntary. Excuse me.

## ANALYSIS

### A. *Standard of Review*

The government seeks reversal of the order of suppression of the October 22, 1986 statement on alternative grounds. First, the government argues that the testimony accepted as true by the district court does not support the conclusion that the October 21, 1986 statement was involuntary. Alternatively, the government contends that even it is assumed that the October 21, 1986 admission was involuntary, the confession obtained from Lewis on October 22, 1986, after a written waiver of her *Miranda* rights, was admissible because it was sufficiently attenuated from the statement given on the previous day. The government d^^s not intend to offer the October 21, 1986 statement at trial.

 We review *de novo* a district court's conclusion that a statement was involuntary. *United States v. Wolf,* 813 F.2d 970, 974 (9th Cir.1987) (citing *Colorado v. Connelly,* — U.S. —, 107 S.Ct. 515, 520–21, 93 L.Ed.2d 473 (1987); *see also Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 2145, 90 L.Ed.2d 636 (1986) ("manner in which a statement was extracted is, of course, relevant to the purely legal question of its voluntariness"). We review the district court's findings of fact under the clearly erroneous standard. *United States v. Hudgens,* 798 F.2d 1234, 1236 (9th Cir.1986). Because the district court accepted the facts found in Degnan's declaration as true, in our review of the evidence, we must make the same assumption on this appeal.

### B. *Voluntariness of the October 21, 1986 Admission*

The government argues that the district court improperly relied on its personal experience in concluding that the October 21, 1986 admission was not voluntary rather than on the evidence in the record. The government claims that the facts in Degnan's declaration concerning Lewis' condition at the time of the two minute conversation on October 21, 1986 demonstrate that her statements were voluntary. We agree.

The court accepted as true Degnan's sworn statement that Lewis said she was feeling "O.K." The evidence shows that Lewis was alert and her answers to the agent's questions were responsive. She was able to recall past events accurately

including the inability of Special Agent Fujita to run as fast as she can. All contradictory statements in Lewis' declaration were rejected by the court as untrue. Degnan's declaration shows that her responses were made knowingly and voluntarily.

There was no evidence in Degnan's declaration that would support an inference that Lewis was withdrawing from heroin addiction on October 21, 1986 or what effect such condition would have on her ability to act voluntarily. There is no evidence in the record showing when she last injected or ingested any narcotic substance. There is no evidence in the record that a person is not accountable for what he or she says for several hours after receiving a general anesthetic.

In making his oral findings, the trial judge candidly acknowledged that his determination of the issue of voluntariness was "influenced by his personal experience" and what other people told him about his own behavior after surgery as the result of receiving a general anesthetic.

■ We begin our discussion of the applicable law with the statement of an obvious principle. The trial judge in this matter was not a competent witness to Lewis' condition. "The judge presiding at the trial may not testify in that trial as a witness. No objection need be made in order to preserve the point." Fed.R.Evid. 605.

Furthermore, Rule 602 of the Fe'.ral Rules of Evidence prohibits a witness from testifying "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." No evidence was presented that the trial judge has personal knowledge of Lewis' actual condition at the time she spoke to the agents on October 21, 1986. Thus, had the trial judge been sworn as a witness to testify to the effect of a general anesthetic on Lewis' ability to make a knowing and voluntary statement, his testimony would have been incompetent because of his role as presiding judge in this matter and his lack of percipiency.

Lewis contends for the first time on appeal that the trial judge properly relied on his personal experience based on the court's power to take judicial notice of adjudicative facts under Rule 201 of the Federal Rules of Evidence. This argument is unpersuasive.

A trial judge is prohibited from relying on his personal experience to support the taking of judicial notice. "It is therefore plainly accepted that the judge is not to use from the bench, under the guise of judicial knowledge, that which he knows *only as an individual* observer outside of court." 9 J. Wigmore, Evidence in Trials at Common Law § 2569, at 723 (J. Chabourn rev. ed. 1981) (emphasis in original).

■ In relying on his "personal knowledge" the trial judge did not advise the parties he was taking judicial notice of Lewis' condition at the time she spoke to the agents on October 21, 1986. Furthermore, the trial judge did not rely on facts "generally known within the territorial jurisdiction of the trial court or ... capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201(b). Instead, he looked solely to his own reaction to an anesthetic. The record is silent concerning the nature of his illness, the surgical procedure performed upon the trial judge, the type and amount of anesthetic administered to him, or its general effect on a patient. Announcement on the record of the fact that a court is taking judicial notice is necessary to accord a party the "opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." Fed.R.Evid. 201(e).

Lewis relies on *Bey v. Bolger*, 540 F.Supp. 910 (E.D.Pa.1982) for the proposition that "[c]ourts have also taken judicial notice of commonly known health facts." In *Bey*, the district court took judicial notice in a written memorandum setting forth the basis for its ruling in cross motions for partial summary judgment that a person suffering hypertension is susceptible to stroke, heart attack or other physical ailment. Thus, in *Bey*, the parties were given an opportunity to ask the court to reconsider the propriety of taking judicial notice of the effect of hypertension. Furthermore,

the trial judge in *Bey* did not indicate to the parties that he was relying on his personal experience with hypertension.

The trial judge's reliance in the instant matter on facts known to him from his personal experience, denied the government the opportunity to test the basis for the court's opinion concerning the effect of an anesthetic on a person's freedom of choice through the usual methods that assure trustworthiness in our adversarial system of justice. The prosecutor was denied the opportunity to contrast the nature of the illness or injury suffered by the judge with Lewis' abscessed shoulder, the amount of anesthesia administered to each, or the actual statements made by the judge which others characterized as "incredible" with the responses made by the defendant in this matter. Lewis' statements on October 21, 1986 were not "incredible" nor unresponsive. Instead, her answers demonstrated her capacity to understand what was said to her and to respond truthfully.

Our independent review of the record has convinced us that Lewis' October 21, 1986 statement was voluntary. The district court was correct in finding that the agents' conduct was *not* coercive. The district court erred, however, in concluding, based on his personal knowledge of the effect of an anesthetic upon him, that Lewis was not in a position to make a voluntary and knowing statement at the time of her brief conversation with the agents on October 21, 1986. There is no evidence in the record to support the court's finding that this statement was obtained by trickery or deceit. No ruse or false representation was employed by the agents. The questions asked by the agents concerning whether she would "come clean," and how many banks were involved, were straight forward and clear in their objective.

C. *Admissibility of the October 22, 1986 Confession*

▪ The government contends that the district court erred in concluding that the confession obtained on October 22, 1986 was inadmissible because it was tainted by the earlier statement. The government asserts that the record shows that the confession was sufficiently attenuated from the statement made on the previous day because of (1) the *Miranda* warning and Lewis' written waiver of her right to counsel and to remain silent, (2) the twenty-four hour interval between the two statements, and (3) the fact that the agents did not refer to the fact that she had previously admitted committing three bank robberies.

The government concedes that the October 21, 1986 statement is inadmissible against Lewis because the agents failed to warn Lewis of her right to counsel and the right to remain silent during police questioning. The fact that the admission obtained on October 21, 1986 was *not* preceded by a *Miranda* warning does not compel exclusion of the confession obtained the following day.

In *Oregon v. Elstad*, 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), the Supreme Court declined to treat the failure to admonish a defendant of his right to counsel during interrogation and his right to remain silent as the equivalent of actual coercion which would taint and render inadmissible a subsequent voluntary statement made after a proper warning and waiver. *Id.* at 318, 105 S.Ct. at 1298. In *Elstad*, the Court instructed that the need to deter unreasonable searches under the fourth amendment, which mandates the suppression of evidence "no matter how probative their fruits," is inapplicable to a "procedural *Miranda* violation." *Id.* at 306, 105 S.Ct. at 1292. The court summarized its conclusion in *Elstad* as follows: "We hold today that a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings." *Id.* at 318, 105 S.Ct. at 1298.

We discussed a trial court's responsibilities in applying the *Elstad* rule in *United States v. Wauneka*, 770 F.2d 1434 (9th Cir.1985).

Under the Supreme Court's analysis in *Elstad*, in determining the admissibility of a defendant's statement given after the *Miranda* warning, the court should

look first to determine whether the statement made by a defendant before the *Miranda* warning was actually coerced in violation of the fifth amendment. If it was, then the court must suppress the evidence unless the violation was sufficiently attenuated to permit the use of the evidence under the standards announced in *Brown [v. Illinois*, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)]. If, on the other hand, the prior statement was voluntary in the sense that it was not coerced in violation of the fifth amendment, though obtained in technical violation of the *Miranda* requirements, the court should suppress the statement given after the *Miranda* warning only if the court finds that the subsequent statement was not voluntarily made. This decision would take into consideration the surrounding circumstances, the combined effect of the entire course of the officer's conduct upon the defendant, including the effect of his previously having made a confession, and the manner in which the officers utilized this prior confession in obtaining a second confession.

*Id.* at 1440.

In applying *Elstad* to these facts, the district court in the matter before this court stated as follows:

Elstad says whether the effect of the first statement, assuming it is voluntary —I will assume it is for the moment—assuming the first statement is voluntary that doesn't preclude a valid *Miranda* waiver later, assuming that the effect of the first statement is sufficiently attenuated so that the court no longer has to assume that the defendant felt that she had already sold herself down the river and, therefore, was in effect compelled to make the second statement.

The trial court's reading of *Elstad* is contrary to our interpretation in *Wauneka. Elstad* requires a consideration of attenuation only if the first statement was "actually coerced in violation of the sixth amendment." *Wauneka,* 770 F.2d at 1440. The trial court's error in construing *Elstad* is not dispositive, however, because it concluded that the second statement was inadmissible on the ground that it was "not sufficiently attenuated" from the effect of non-coercive but "abusive and clearly improper" procedures used in obtaining the admissions the previous day.

In *Wauneka,* we also set forth the duty of a trial judge who has concluded that the initial oral statement is the product of coercive law enforcement tactics.

In evaluating whether the subsequent confession is sufficiently attenuated from the previous illegal interrogation, the trial court will be guided by the three factors delineated in *Brown:* (1) the temporal proximity of the statements and the unconstitutional activity; (2) the presence of any intervening circumstances; and (3) the purpose and flagrancy of the official misconduct.

*Id.* at 1441 (citing *Brown,* 422 U.S. at 603–04, 95 S.Ct. at 2261–62). The district court concluded in the matter *sub judice* that there was not sufficient attenuation to admit the second statement based on the following factors:

First, there was no significant change in the circumstances under which it was given. She was still in the same hospital room. The same agents appeared, and they came within 24 hours. She had no opportunity to talk to anybody else in the interim. And in effect, since she was still emerging from the combination of her drug and anesthetic stupor, it was a continuation of what went on the day before.

The district court failed to consider facts in the record that demonstrated attenuation and instead relied on matters not supported by the evidence. Twenty-four hours elapsed between the time of the first conversation and Lewis' confession on October 22, 1986. The agents had no contact with Lewis during this time. The evidence does not show that the interview on the second day was a continuation of what had occurred on the previous day. The agents did not refer to the fact that she had made a statement the previous day.

There is no evidence to support the trial court's oral finding that Lewis had no op-

portunity to talk to anyone else prior to the second conversation. Contrary to the court's finding that she was emerging from the effects of heroin and an anesthetic on October 22, 1986, Degnan stated in his declaration that the hall nurse told him that Lewis "was alert and not on any medication which would affect her ability to be interviewed." Degnan also alleged that "Lewis looked alert and much better than she did the day before." She told Degnan that she was feeling "O.K." As set forth above, when Lewis was advised of her constitutional rights, signed a waiver form which stated that "no pressure or coercion of any kind has been used against me."

The evidence shows that she had prior experience with law enforcement and was aware of the procedure for waiving of her constitutional rights. On July 7, 1983, she refused to sign a waiver of rights form. On July 8, 1983 and August 1, 1983, she signed waivers of her constitutional rights.

The record shows that the agents neither exploited the fact that she earlier had made an admission nor engaged in conduct that was "flagrant or designed to pressure the appellant into giving an unfair confession." *See United States v. Manuel*, 706 F.2d 908, 912 (9th Cir.1983) (overnight delay between illegal arrest and confession was a "considerable period of time" sufficient to show attenuation). There is no evidence in the record of actual coercion during either interview.

The totality of the facts and circumstances properly before the district court demonstrate that there was sufficient attenuation from any alleged illegality in the prior interview. It is also clear from the facts presented in the limited record before us that Lewis' October 22, 1986 confession was voluntary and admissible because she was advised of her constitutional rights and freely and knowingly waived them at a time when she was alert and not under the influence of any medication.

## CONCLUSION

 The trial judge erred in relying upon his personal experience in recovering from anesthesia in resolving the disputed question whether the defendant was competent to make a voluntary statement on October 21, 1986 after she had regained consciousness following surgery under anesthesia. The evidence in the record credited by the district court shows that Lewis had the capacity to relate past facts responsively, accurately, and coherently. The record also demonstrates that she was fully advised of her constitutional rights prior to making a confession on October 22, 1986. Finally, the agents did not engage in any coercive conduct for the purpose of obtaining incriminating statements nor did they attempt to exploit her prior unwarned admission.

As noted above, the evidence presented to the district court on the motion to suppress the October 22, 1986 confession consisted solely of declarations offered by each side. We have determined that the credible evidence contained in these declarations does not support the district court's conclusion that the confession was involuntary. We cannot tell from this limited record, however, whether additional evidence is available to either side that would assist the district court in deciding whether the confession was voluntary. It is possible that the court's announcement prior to argument, that the government had not met its burden of proving voluntariness, may have dissuaded defense counsel from presenting additional evidence concerning Lewis' mental state on October 21, 1986.

A remand of this matter, without according Lewis the opportunity to renew her motion to suppress, might result in the admission of evidence that would have been suppressed had her counsel not relied upon the district court's erroneous application of the law to the facts contained in the declarations filed by the parties. Accordingly, our reversal of the court's order suppressing the October 22, 1986 confession should not be construed as precluding the district court from conducting a hearing to consider additional evidence not previously offered should the suppression motion be renewed. *See Moses Lake Homes, Inc. v. Grant County*, 276 F.2d 836, 853 (9th Cir. 1960), *rev'd on other grounds*, 365 U.S.

744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961); *United States v. Commonwealth of Virginia,* 88 F.R.D. 656, 664 (E.D.Va.1980).

REVERSED AND REMANDED.