942 F.2d 795
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Hector RICANO-GAVINO, aka Carlos Andrade-Ramirez, Defendant-Appellant.
 No. 90-50361.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 5, 1991.*
Decided Aug. 16, 1991.
 
 Before PREGERSON, CYNTHIA HOLCOMB HALL and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Hector Ricano-Gavino appeals his conviction, after a jury trial, of conspiracy to possess a controlled substance (marijuana) with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 846. He argues that certain items of evidence were seized in violation of his Fourth Amendment rights. He also argues that his post-arrest statements were not voluntary and should not have been admitted. We affirm.
 
 I.
 
 3
 The police entered Ricano-Gavino's home shortly after they arrested him. While in Ricano-Gavino's home the police seized an assault rifle without a warrant. This rifle was used in evidence at trial, and was also mentioned in an affidavit in support of a subsequently executed search warrant. Ricano-Gavino argues that the seizure of the assault rifle was improper.
 
 
 4
 The lawfulness of a search or seizure is a mixed question of law and fact that is reviewed de novo. United States v. Linn, 862 F.2d 735, 739 (9th Cir.1988); United States v. Howard, 828 F.2d 552, 554 (9th Cir.1987). However, the findings of fact on which the lawfulness ruling is based are reviewed for clear error. Linn, 862 F.2d at 740. If the government seeks to fit the search within one of the exceptions to the warrant requirement, the government must prove the exception by a preponderance of the evidence. Linn, 862 F.2d at 739.
 
 
 5
 The government argues that the assault rifle was appropriately seized under the "plain view" exception to the warrant requirement. The plain view doctrine applies if the government shows (1) that the officers were in a lawful position to view the seized items and (2) that the seized items immediately appeared to be contraband or evidence of a crime. Horton v. California, 110 S.Ct. 2301, 2308 (1990); United States v. Disla, 805 F.2d 1340, 1346 (9th Cir.1986) (officers in a lawful position to view the bag that contained cocaine, since it might have contained an item for which search was authorized by a warrant); United States v. Washington, 797 F.2d 1461, 1468-69 (9th Cir.1986). Inadvertent discovery of the evidence is no longer a prerequisite to the "plain view" exception. Horton, 110 S.Ct. at 2304 (1990).
 
 
 6
 Whether the seizure of the assault rifle was appropriate turns on factual disputes. Several officers testified that defendant invited them into his house so that he could get dressed and avoid the prying eyes of his neighbors, that the officers informed defendant they would have to follow him around while he got dressed, and that defendant approved this procedure. On the other side, defendant testified that he did not willingly allow the officers into his house. The district court's resolution of this conflict in testimony was not clearly erroneous.
 
 
 7
 There is also a factual dispute as to whether the automatic rifle was readily visible. This issue also boils down to a credibility question between several officers and the defendant. More than one officer testified that the gun was visible, while the defendant testified that it could not be seen. Again, the district court's resolution of this conflicting testimony was not clearly erroneous. Further, the fact that the first officer who walked by the gun did not initially see it does not render the district court's finding that the gun was readily visible clearly erroneous. United States v. Gilbert, 774 F.2d 962, 964 (9th Cir.1985).
 
 
 8
 When the appropriate legal standards are applied to these facts, it becomes clear that the seizure of the rifle fell within the "plain view" exception. First, since defendant asked the officers to enter and consented when they told him they would follow him if he got dressed, they were in a lawful position to view the automatic rifle. See Gilbert, 774 F.2d at 963 (defendant's request that officers retrieve her clothes from her trailer home while she was transported to jail put officers in a lawful position to view the heroin apparatus scattered around her trailer home). Second, the incriminating character of the automatic rifle was immediately apparent in the context of the defendant's suspected activities as a drug dealer.
 
 II.
 
 9
 Ricano-Gavino challenges the sufficiency of the affidavit in support of the search warrant under which much evidence later used at trial was found. For a search warrant to properly issue, there must be "probable cause" to support it. Probable cause means a "fair probability that contraband or evidence of a crime will be found." Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause was established in this case. Among other things, the affidavit of DEA Special Agent Pedro Pena stated: (1) That agent Pena had been employed by the DEA for two years and had previously been employed by the Austin, Texas, police department [SER at 54]; (2) that based on his training and experience, Agent Pena knew that drug traffickers often maintain residences for the purposes of smuggling, distributing and storing narcotics, and that traffickers often maintain on hand narcotics, large amounts of U.S. currency, and financial and other documents reflecting drug trafficking activity [SER at 55--56]; (3) that in September 1988 Pena met defendant (Carlos) and his coconspirators Vera and Sandra Leon in Coronado, California, and discussed the sale of approximately 1000 pounds of marijuana [SER at 56]; (4) that the investigation continued for about a year, [SER 56--67], but on September 6, 1989, Pena executed an arrest warrant for defendant at 165 Rosemary Place, Chula Vista, California [SER at 67]; (5) that after defendant was arrested, he was advised of and waived his Miranda rights, and subsequently told Pena's fellow agent, among other things, that he had been selling narcotics for the past ten to fifteen years, that he would receive between 50 and 100 kilos of marijuana from sources in Mexico, and that he smuggled the marijuana into the United States for distribution [SER at 68--69]; (6) that appellant further told Pena he frequently resided at 165 Rosemary Place, Chula Vista, California, with his "ex-wife," Maria Luisa Rios-Ramirez [SER at 69].
 
 III.
 
 10
 Finally, Ricano-Gavino argues that a number of incriminating statements that he made after his arrest should not have been admitted into evidence.
 
 
 11
 The district court's decision that a defendant knowingly and voluntarily waived his Miranda rights is a mixed question of law and fact. The district court's ultimate conclusion regarding voluntariness is reviewed de novo, but the district court's factual findings on which the voluntariness conclusion is based are reviewed for clear error. United States v. Layton, 855 F.2d 1388, 1409 (9th Cir.1988); United States v. Lewis, 833 F.2d 1380, 1384 (9th Cir.1987). The government must prove that a waiver of Miranda rights occurred, and that any statements were voluntarily made, by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168--69 (1986).
 
 
 12
 In this case there was corroborated testimony from the arresting officers that they read defendant's Miranda rights to him, and that defendant understood his rights. The officers also testified that defendant had his wits about him. Further, the officers testified that no promises were made to the defendant, though he was told that his help would be reported to the United States Attorney. See United States v. Guerrero, 847 F.2d 1363, 1366 (9th Cir.1988) (speculation that cooperation will have a positive effect and promises to recommend leniency do not render a confession involuntary).
 
 
 13
 On the other side, defendant claims that he was abusing narcotics heavily at the time of his arrest, that he does not remember being given any Miranda warning, and that the police promised to make him an informant if he testified.
 
 
 14
 Thus, the Miranda issue turns on the factual question of witness credibility. In these circumstances the district court's finding that defendant was informed of and understood his Miranda rights does not appear clearly erroneous. Moreover, the district court's conclusion that it had "no reason at all to believe ..., based on the evidence before [it], that [defendant] was under the influence of cocaine to the extent that he didn't know what he was doing" is also not clearly erroneous. The defendant's statements were properly admitted.
 
 
 15
 The district court is AFFIRMED.