**UNITED STATES, Appellee**

v.

**Gary A. WASHINGTON, Staff Sergeant U.S. Air Force, Appellant.**

No. 95–0721.
Crim.App. No. 30804.

U.S. Court of Appeals for
the Armed Forces.

Argued Oct. 1, 1996.

Decided Aug. 26, 1997.

For Appellant: *Captain Todi S. Carnes* (argued); *Colonel Jay L. Cohen* (on briefs); *Major Ormond R. Fodrea* and *Captain Eric N. Eklund.*

For Appellee: *Captain Libby A. Brown* (argued); *Colonel Jeffery T. Infelise* and *Lieutenant Colonel Michael J. Breslin* (on briefs); *Colonel Theodore J. Fink.*

*Opinion of the Court*

SULLIVAN, Judge:

In the summer of 1992, appellant was tried by a general court-martial at Shaw Air Force Base, South Carolina. Contrary to his pleas, he was found guilty of conspiracy to commit larceny (2 specifications), violating Air Force Regulations (2 specifications), larceny (4 specifications), extortion (2 specifications), impersonating an agent of superior authority, and bribery (4 specifications) and graft (2 specifications) totaling more than $70,000.00, in violation of Articles 81, 92, 121, 127, and 134, Uniform Code of Military Justice, 10 USC §§ 881, 892, 921, 927, and 934, respectively. On July 28, 1992, the members of his court-martial sentenced him to a bad-conduct discharge, confinement and forfeiture of $250.00 pay per month for 10 years, a fine of $70,000.00, and reduction to E–1. On August 11, 1993, the convening authority approved this sentence. The Court of Criminal Appeals affirmed the findings of guilty and the sentence, except for confinement exceeding 9 years and 99 days. 42 MJ 547, 563.

On March 13, 1996, this Court granted the following issues for review:

I

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT WHEN SHE DENIED THE DEFENSE REQUEST FOR INVESTIGATIVE SUPPORT MADE UNDER THE AUTHORITY OF *UNITED STATES v. GARRIES*, 22 MJ 288 (CMA 1986).

II

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT IN DENYING THE DEFENSE MOTION TO SUPPRESS APPELLANT'S CONFESSION.

On May 8, 1996, we granted the following additional issue for review:

III

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN SHE DENIED THE DEFENSE MOTION TO DISMISS THE CHARGES AND SPECIFICATIONS ON THE BASIS THAT THE CONVENING AUTHORITY'S FAILURE TO APPOINT AN IMPARTIAL DEPOSITION OFFICER IN APPELLANT'S CASE AMOUNTED TO A DENIAL OF DUE PROCESS.

We hold that no reversible error occurred in this case.

The Court of Criminal Appeals summarized the basic facts of this case as follows:

All the alleged offenses arose out of the appellant's service as a contingency contracting officer at Al Dhafra Air Base in the United Arab Emirates (U.A.E.) from September 1990 through March 1991, during Operations Desert Shield and Desert Storm. According to the prosecution's evidence, the appellant, with the assistance of his driver, one Omar Hassan, solicited and accepted bribes and kickbacks from several U.A.E. businessmen as "commissions" for awarding (or influencing the award of) Air Force contracts, and threatened contractors with cancellation of their contracts unless they continued to pay him what he asked. The larceny and conspiracy convictions were based on evidence of collusion between the appellant and contractors to inflate prices, thereby increasing the contractors' profits and the appellant's "commissions."

42 MJ at 550–51.

I

█ The first granted issue asks if the military judge erred in denying appellant's motion to dismiss the charges because the convening authority denied his pretrial request for investigative assistance. Appellate defense counsel summarizes the defense position as follows:

Appellant contends that he fully and completely complied with the conditions prerequisite set forth in *Garries* for inves-

tigative assistance, that his request for the assistance of an investigator over a mere thirty-day period was more than reasonable under the extraordinary circumstances of his case, and that he made a proper showing of need. *United States v. Tornowski*, 29 MJ 578 (AFCMR 1989), [*pet.*] *denied*, 30 MJ 214 (CMA 1990). It is clear that under the circumstances, Appellant was materially prejudiced by this erroneous denial which left him without adequate means to prepare for his Article 32 hearing, fully and completely cross-examine the witnesses in or locate witnesses for the deposition hearings, or develop a defense for his trial.

We disagree. *United States v. Ndanyi*, 45 MJ 315 (1996*); United States v. Garries, supra.*

In trial defense counsel's written pretrial motion, the following reasons were advanced for his earlier request for expert assistance:

> To justify why an investigator was needed, the Defense delineated several factors: *The large number of specifications; the complex nature of the alleged offenses; the situs of the offenses being overseas; the majority of Government witnesses being overseas; cultural and language barriers.* ... As to what an investigator would be asked to do that would assist the Defense, several tasks were enumerated; *interviewing Government witnesses, and conduct background checks on Government witnesses; locate and interview potential Defense witnesses; trace documents relating to contracts originating in the UAE; trace receipts* for meals relating to travel voucher fraud.... The third prong is the reason why the Defense Counsel and Staff could not perform the tasks themselves. In response to this element, the Defense points out *the overwhelming amount of work that was required to investigate this case.* That does not include the volume of work necessary to prepare the case for trial. *The Government's Counsel was not required to investigate their case and prepare it for trial. The Government, in fact, had unlimited resources available to it. The Defense requested only one investigator; the Government had at least six AFO-SI investigators working on this case at one time or another.* The majority of work to be done by an investigator was to be done in the UAE. There have not been any military defense counsel in the UAE since mid–1991.

(Emphasis added.)

The military judge denied appellant's motion to dismiss, making the following findings of fact and conclusions of law:

### C. Denial of An OSI Investigator

In his request for investigative assistance, the accused cites the following as why an investigator is needed: the large number of specifications in the case, the complex nature of the offenses, the situs of the offenses in the United Arab Emirates (UAE), the location of the witnesses in the UAE, and the language and cultural barriers to be encountered in the UAE. The tasks enumerated as to what the investigator will do are to locate and interview witnesses for the government and for the defense, perform background checks on all witnesses, and to trace contractual documents. The request indicates that the defense team is unable to perform these tasks because of the amount of travel necessary coupled with the defense counsel's current case load.

The key to a successful demonstration of necessity for an investigator *is a plausible showing that the investigator could obtain information that the defense and its staff would not be able to obtain on its own.* I find that the defense has failed to make such a showing. The government made all its witnesses available to the defense when the parties were in the UAE for the videotape depositions. Any background checks which needed to be done could have been done by the defense team when they were in the UAE. Any documents which are pertinent to the case were supplied by the government. Finally, the defense appears to be on a "fishing expedition" as to defense witnesses who "may exist who can refute the charges" or "may be helpful." In this respect the defense has failed to

show any more than a mere possibility of assistance.

Accordingly, I find that there is no reasonable probability that the requested services will be of assistance or that denial of the request will result in a fundamentally unfair trial.

(Emphasis added.)

In *United States v. Gonzalez,* 39 MJ 459 (1994), this Court viewed favorably the three-step test articulated by the lower court for determining whether government-funded expert assistance was necessary. The lower court had said:

> There are three aspects to showing necessity. First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop.

39 MJ at 461. Later, in *Ndanyi,* 45 MJ at 316, we held that the defense cannot reject expert military assistance simply because the prosecution employs expert civilian assistance. We reaffirm those decisions today and hold that the defense cannot establish its inability to gather evidence, even in a foreign country, simply by noting that the prosecution employed expert assistance to prepare its case.

Here, the Government arranged for defense access to the prosecution's witnesses and documentary evidence, and there was no showing that this access was inadequate. In addition, the defense failed to justify its request for expert assistance, other than to generally say the case involved a large number of complicated charges arising overseas in a foreign country. Accordingly, we conclude that the military judge's decision to deny government-funded investigative assistance was not an abuse of discretion. *See Gonzalez,* 39 MJ at 461 (no error where government-provided interpreter was not used by defense to justify request for investigator in foreign country); *Garries,* 22 MJ at 291 (abuse-of-discretion standard).

## II

█ The second granted issue questions the military judge's decision admitting evidence of appellant's pretrial statements to agents of the Air Force Office of Special Investigations (AFOSI). Appellant objected to admission of this evidence on two grounds. First, he claimed that these statements were made by him after he requested and the agents refused to provide him with an attorney. Second, he asserted that the statements were unlawfully coerced by a combination of restraint, intimidation, threats, and promises by the AFOSI and Colonel Rust, his commander.[1] 42 MJ at 557–59.

The Court of Criminal Appeals noted that "[t]he military judge found the appellant had not requested a lawyer at any time during his AFOSI interrogation." 42 MJ at 560. It noted the conflict of evidence on this question, stating:

> Agents Pecko and Bland resumed the interrogation the following morning, 7 March 1991, at about 0800. Again, Agent Pecko advised the appellant of his Article 31/Fifth Amendment rights and, again, the appellant waived them. At this point, the accounts of the appellant and his AFOSI interrogators diverge. Appellant claims that, sometime during the morning of 7 March, he asked for a lawyer. According to the appellant, Agent Pecko refused to honor the request or stop the interrogation. Appellant testified Agent Pecko told him that they did not have time for a lawyer, and offered to let him meet with Colonel Rust instead. Not surprisingly, Agent Pecko's version of these events is quite different. He testified that the appellant never requested a lawyer, but asked to see Colonel Rust on his own initiative. Agent Bland corroborates Agent Pecko's account. In any event, Agents Pecko and Bland then took the appellant to see Colonel Rust.

> \*　　\*　　\*

> When the appellant had completed his handwritten statement, the agents used it to computer-print a double-spaced draft.

---

1. *See* 42 MJ at 554 n. 14.

Appellant reviewed the draft, and made corrections and revisions. The revised draft was then printed verbatim on a standard AFOSI statement form. This form has preprinted Article 31/Fifth Amendment rights advice, and places where a suspect checks off his choices as to assertion of rights or waiver. Agent Pecko went through these rights again with the appellant, who then checked off his choices. At this point, the testimony conflicts one more time. All agree the appellant checked off the "I want a lawyer" block, but then scratched it out and checked "I do not want a lawyer." However, the appellant said he checked "I want a lawyer" because he wanted one, and only scratched it out because Agent Pecko told him he could not have one. Agent Pecko testified the appellant checked "I want a lawyer" as a clerical mistake, orally reiterated that he did not want a lawyer, and scratched the mark out for that reason. Once again, Mr. Lukens supports Agent Pecko's version. In any case, the appellant went on to review his printed statement, sign it, and take an oath to its truth. This completed the interrogation.

42 MJ at 558–59.

Appellate defense counsel before this Court still contend that "[a]ppellant *did* request counsel, and the military judge abused her discretion in finding otherwise." Final Brief at 44. However, this argument inappropriately invites this Court to make the factual findings necessary to support appellant's argument for suppression under *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). *See* Art. 67(c), UCMJ, 10 USC § 867(c)(1994). In addition, we note that the military judge, who did have power to decide the factual issues, conducted an evidentiary hearing and resolved them against appellant.

Ample evidence exists in the record to support the military judge's findings, so we are not persuaded that they are clearly erroneous. *See United States v. Melvin,* 91 F.3d 1218, 1222 (9th Cir.1996); *cf. Davis v. United States,* 512 U.S. 452, 458–60, 114 S.Ct. 2350, 2355, 129 L.Ed.2d 362 (1994). Finally, the Court of Criminal Appeals also concluded

that the judge's decision was not clearly erroneous, and no argument has been presented that that court erred in declining to exercise its own factfinding power in this matter. *See United States v. Cole,* 31 MJ 270, 272 (CMA 1990); *United States v. Grostefon,* 12 MJ 431, 435 n. 8 (CMA 1982); *see also United States v. Burris,* 21 MJ 140, 143 n. 7 (CMA 1985).

■ Appellant also argues that his motion to suppress his pretrial statements should have been granted because "under the totality of the circumstances ... the Government failed to prove by a preponderance of the evidence that [a]ppellant's confession was not the product of Government coercion and unlawful inducement." Final Brief at 43. He cites "a cold, sterile listing" of the facts surrounding appellant's confession as follows:

a: Being roughly treated upon apprehension;

b: Being denied the opportunity to speak with his supervisor as requested;

c: Being subjected to an interrogation of two days' duration;

d: Being told by his commander that he (the commander) wanted to spit in his face;

e: Being verbally abused by this selfsame commander who called him a "black jew";

f: Being promised "de facto" immunity by Colonel Rust if only he would execute a statement;

g: Being repeatedly denied the opportunity to consult with counsel as requested;

h: Being given a patently illegal order by Colonel Rust which cut him off from his friends and coworkers for the next year.

Final Brief at 38. He then concludes by stating, "Taking a holistic view of the human interaction occurring over the two days of interrogation, particularly that between [a]ppellant and Col Rust, it becomes self-evident that [a]ppellant's incriminating statements to the OSI on 7 March were the product of coercion and unlawful inducement." *Id.* at 39.

The military judge and the Court of Criminal Appeals both rejected appellant's argument that his statements were not voluntary. We review this question of law *de novo* and

agree. *See United States v. Martinez*, 38 MJ 82, 86 (CMA 1993), citing *Arizona v. Fulminante*, 499 U.S. 279, 287, 111 S.Ct. 1246, 1252–53, 113 L.Ed.2d 302 (1991), quoting *Miller v. Fenton*, 474 U.S. 104, 110, 106 S.Ct. 445, 449–50, 88 L.Ed.2d 405 (1985). In our view, the court below more persuasively assessed the facts in this case as follows:

Appellant had been fully advised of his rights, and affirmatively waived them, four times before he began his incriminating statements. In addition, he had been "reminded" of his rights another time. Before he signed and swore to his formal written statement, he was fully advised and waived his rights again. In comparison to such constant reinforcement of the appellant's rights, the length of the questioning and actions of Colonel Rust were insignificant. Moreover, the record portrays the appellant as a "cagey" operator (or at least someone who perceived himself to be so) who decided he would try to talk his way out of trouble. He willingly gave up his rights to "fence" with the AFOSI. Over the hours of questioning, the agents confronted the appellant with the evidence against him, piece by piece, to include playing the 6 March surveillance videotape. Appellant still chose to continue the duel, despite every opportunity to stop the interrogation. Eventually, the appellant decided he would acknowledge taking money from UAE vendors, but without admitting he was taking it for himself. As the appellant now undoubtedly realizes, these were all unwise choices. Nonetheless, they were his free and unconstrained choices.

42 MJ at 561.

### III

The third granted issue asks whether it was error for the convening authority to appoint Major Russell as the deposition officer for purposes of deposing various witnesses in the UAE. *See* Art. 49(c), UCMJ, 10 USC § 849(c). The defense objected to this appointment, prior to the depositions and at appellant's trial, on the basis of Major Russell's earlier prosecutorial involvement in appellant's case. He construed Article 49(c) in

accordance with Fed.R.Crim.P. 15(d) and Fed.R.Civ.P. 28(c) to strictly preclude depositions "taken before a person who is a relative or employee or attorney or *counsel of any of the parties,* or is a relative or employee of such attorney or counsel...." (Emphasis added.)

The military judge denied appellant's motion to dismiss on the basis of a violation of his military due process rights. She made the following findings of fact and conclusions of law:

2) Impartial Deposition Officer

RCM 702(f) sets out the duties of a deposition officer, one of which is to administer oaths to witnesses and the recorder. RCM 702(d) indicates that the deposition officer will be an officer. Thus, the only Manual requirements to be a deposition officer are that the person be an officer who is authorized to administer oaths. There is no requirement that a deposition officer act in a judicial capacity in the same sense as a military judge or Article 32 Investigating Officer. There is no requirement that the deposition officer have no prior involvement in the case. *However, it would be preferable if the deposition officer were impartial and unbiased.* In this case, Major Russell, the deposition officer, had been in the UAE acting as Staff Judge Advocate while the investigation was ongoing. The OSI in the UAE kept Major Russell advised of their progress in the Washington case, but most of their legal advice came from the main base office at Shaw. After his return to Shaw AFB, Major Russell was the Deputy Staff Judge Advocate but functioned mainly in a civil law capacity. Captain Joseph was the Chief of Adverse Actions and Major Russell had little to do with the Washington case. *Major Russell was selected as the deposition officer because of his prior experience in the UAE and his rank of major.* Under these circumstances and in light of the predominantly administrative nature of the duties of a deposition officer, I find that the appointment of Major Russell as the deposition officer was appropriate and he was not disqualified.

Major Russell was properly appointed and his approval as deposition officer was made known orally to all parties, followed up by written confirmation. There is no evidence that any of the provisions of RCM 702 were violated.

(Emphasis added.)

■ The Uniform Code of Military Justice does not expressly provide that a deposition will be taken before an officer who is impartial and appears impartial. Neither the Rules for Courts–Martial nor the Military Rules of Evidence provide an impartiality requirement. Nevertheless, Article 46(c) does provide the following:

(c) Depositions may be taken before and authenticated by any military or civil officer *authorized by the laws of the United States* or by the laws of the place where the deposition is taken to administer oaths.

(Emphasis added.)

This statutory language is broad enough to incorporate the impartiality provisions of Fed.R.Crim.P. 15(d) and Fed.R.Civ.P. 28(c). In addition, we have generally recognized the requirement of personal disinterest with respect to ministerial actors in the military justice system. *United States v. Donati*, 14 USCMA 235, 239, 34 CMR 15, 19 (1963) (as matter of basic fairness, court reporters and interpreters must have no personal interest in case). Accordingly, we conclude that these minimum standards of fairness apply to deposition officers in the military justice system, and that the military judge erred in not applying them in this case. *See generally* 3 Wigmore, *Evidence* §§. 802–03 at 266–67 (Chadbourn rev.1970) (deposition officer must not be "open to plain suspicion of bias or interest for one or the other of the parties").

■ Nevertheless, we are not persuaded that appellant's court-martial should be invalidated simply because the military judge misconstrued the legal requirement that a deposition officer be impartial and appear impartial. *See* Art. 59(a), UCMJ, 10 USC § 859(a). Although Major Russell had been involved in an investigative capacity early on in this case, his active participation in this role, and hence his disqualification, ceased prior to the time of the challenged depositions. *Cf. United States v. Gaines*, 20 USCMA 557, 561, 43 CMR 397, 401 (1971). Moreover, these depositions took place in the UAE during Operation Desert Storm and involved foreign nationals. Since Major Russell was detailed to these duties because of his particular experience and familiarity with this foreign country, the requirement of personal disinterest may not have been controlling in appellant's case. *See United States v. Valli*, 7 USCMA 60, 64, 21 CMR 186, 190 (1956); *see generally United States v. Hessler*, 7 MJ 9, 10 (CMA 1979) (application of constitutional rights on front line of defense in foreign country). Finally, Major Russell's duties in taking these depositions were primarily ministerial (*see* RCM 702(f), Manual for Courts–Martial, United States, 1984)[2] and appellant is hard-pressed to identify any particular conduct by this officer

**2.** (f) *Duties of the deposition officer.* In accordance with this rule, and subject to any instructions under subsection (d)(3) of this rule, the deposition officer shall:

(1) Arrange a time and place for taking the deposition and, in the case of an oral deposition, notify the party who requested the deposition accordingly;

(2) Arrange for the presence of any witness whose deposition is to be taken in accordance with the procedures for production of witnesses and evidence under RCM 703(e);

(3) Maintain order during the deposition and protect the parties and witnesses from annoyance, embarrassment, or oppression;

(4) Administer the oath to each witness, the reporter, and interpreter, if any;

(5) In the case of a written deposition, ask the questions submitted by counsel to the witness;

(6) Cause the proceedings to be recorded so that a verbatim record is made or may be prepared;

(7) Record, but not rule upon, objections or motions and the testimony to which they relate;

(8) Authenticate the record of the deposition and forward it to the authority who ordered the deposition; and

(9) Report to the convening authority any substantial irregularity in the proceeding.

**Discussion**

When any unusual problem, such as improper conduct by counsel or a witness, prevents an orderly and fair proceeding, the deposition offi-

which substantially impacted on the depositions or his court-martial. *See United States v. Yarbrough*, 22 MJ 138 (CMA 1986).[3] In this context, we conclude that any legal error in the appointment of Major Russell as deposition officer in this case was harmless. Art. 59(a).

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.

---

cer should adjourn the proceedings and inform the convening authority.

The authority who ordered the deposition should forward copies to the parties.

3. Appellant's major complaint was that Major Russell failed to have an interpreter present at the taking of the deposition testimony as requested by defense. Reply to Answer at 5,8. He notes portions of the deposition where the foreign deponents had difficulties in communication. The Government responded that these difficulties were temporary and resolved by rephrasing the questions. We agree and see no prejudice in this context.