UNITED STATES, Appellee,

v.

Charles A. CAMPOS, Lance Corporal,
U.S. Marine Corps, Appellant.

No. 97–0525.
Crim.App. No. 95–2050.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 17, 1997.

Decided July 9, 1998.

For Appellant: *Lieutenant Dale O. Harris*, JAGC, USNR (argued); *Lieutenant C.J. McEntee*, JAGC, USNR (on brief).

For Appellee: *Lieutenant J. Russell McFarlane*, JAGC, USNR (argued); *Colonel Charles Wm. Dorman*, USMC, and *Commander D.H. Myers*, JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During March of 1995, appellant was tried by a general court-martial composed of officer and enlisted members at Camp Pendleton, California. Contrary to his pleas, he was found guilty of wrongful use and distribution of methamphetamine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. The members sentenced him to a dishonorable discharge, con-

finement for 10 years, total forfeitures, and reduction to E–1. On September 18, 1995, the convening authority approved the sentence as adjudged, but he suspended all confinement in excess of 4 years for a period of 12 months from the date of appellant's release from confinement. The Court of Criminal Appeals affirmed in an unpublished opinion dated January 17, 1997.

On July 18, 1997, this Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE FAILED TO SUPPRESS A PRETRIAL STATEMENT SIGNED BY APPELLANT.

We hold that the military judge did not err in admitting appellant's confession because it was neither a product of government overreaching nor otherwise involuntary. *See United States v. Washington*, 46 MJ 477, 481–82 (1997); *United States v. Lewis*, 833 F.2d 1380, 1386–88 (9th Cir.1987).

The record in this case shows that on August 5, 1994, appellant was involved in a serious automobile crash. He suffered a severe head injury, a broken neck, and spinal cord damage that resulted in a permanently paralyzed left arm. He was admitted to Naval Hospital Balboa in San Diego, California, and he remained there until October 1, 1994. During that time, appellant wore a "halo" harness or "somi" brace which was attached to his skull by four metal screws.

On September 14, 1994, some 5 weeks after appellant's admission to the hospital, Special Agents Harris and Jacobson of the Naval Criminal Investigative Service (NCIS) questioned appellant concerning the wrongful use and distribution of methamphetamine. After signing a rights'-advisement form, appellant confessed to these offenses and signed a typewritten statement prepared by the agents.

At his court-martial, appellant moved *in limine* to suppress his written statement and any verbal statements made in connection therewith. He alleged that he was impaired by medication and that the NCIS agents illegally interrogated him at the hospital while he was in a sick condition. He asserted that the agents did not consult with medical personnel at the hospital before interrogating him. The investigative agents subsequently testified that they believed appellant was in control of his faculties and capable of understanding his rights.

Appellant further testified that his injuries affected his reasoning, thought processes, and short-term memory. He stated that his ingestion of Tylenol 3 with codeine caused him to forget the contents of the rights' advisement and typed confession which he had signed. Appellant's physician, Commander (CDR) James Bloom, testified that appellant was under the influence of codeine at the time of the interrogation and that codeine "deadens" the brain. CDR Bloom also stated that the hospital at which appellant was recovering did not allow persons on codeine to sign medical consent forms. He further opined that, given the level of codeine in appellant's system, his capacity to distinguish between options presented to him would be limited. Nevertheless, CDR Bloom also stated that neither codeine nor another narcotic would, in itself, be sufficient to overbear one's free will to do what someone else wanted.

The military judge denied the defense motion to suppress appellant's statement. He said in pertinent part:

I find that Special Agents Harris and Jacobson of the Naval Criminal Investigative Service met with the accused on 14 September 1994 at the Balboa U.S. Naval Hospital in San Diego, California, in order to interview him.

I further find that this interview came about in the following fashion: Special Agents Harris and Jacobson went to the Balboa Naval Hospital. The accused was notified by someone that the Naval Criminal Investigative Service was looking for him. The accused then, on his own initiative, tried to find out where the agents were then located; and after ascertaining that they were at the CID, the accused on his own initiative voluntarily went to CID to meet with them.

I find that the accused was never at any time on the 14th of September 1994 appre-

hended, arrested, or taken into custody by any agent of the Naval Criminal Investigative Service, or for that matter any other agent of the federal government. And I further find, therefore, that the accused was at all times throughout his interrogation by the Naval Criminal Investigative Service free to leave.

I find, therefore, that the questioning of the accused by Special Agents Harris and Jacobson was not a custodial interrogation, and therefore the accused had no right to counsel at this interrogation.

I find that at about 0730 to about 0800 on the morning of 14 September 1994 the accused ingested approximately 60 to 90 milligrams of Tylenol 3, a drug which had been prescribed for him and which contains codeine. I further find that the accused also ingested another dosage of Tylenol 3 in an approximate amount of 60 to 90 milligrams, and this second ingestion occurred during the later morning hours of 14 September 1994.

I also find that although this Tylenol 3 had been prescribed for the accused by military doctors, the accused was not required to take the drug according to any set schedule, nor for that matter was the accused required by the medical prescription to take the drug at all. I find, in fact, that the accused was authorized by his prescription to take Tylenol 3 whenever the accused himself felt it appropriate to do so, given any pain level that he may feel that he was experiencing.

I find, therefore, that the accused's ingestion of Tylenol 3 on the 14th of September 1994 was a decision which the accused chose to make of his own free will, and this was a decision that was not required either by the accused's doctors, and it was certainly not administered to him by any agent of the government, especially any agent of the Naval Criminal Investigative Service.

I find, therefore, that whatever impairment the accused may have suffered from on the 14th of September 1994, at the time of his interview by the Naval Investigative Service, was attributable to the accused's own voluntary ingestion of Tylenol 3, not to any act or omission by Special Agents Harris and Jacobson.

I find in particular that Special Agents Harris and Jacobson did not know at the time that they scheduled the interview that the accused would be under any type of medication or under the influence of any type of drug at the time of the interview. In other words, I find that the agents did not specifically pick the time and the place of the interview in order to select a time during which the accused would be impaired so that they might take advantage of the impairment in order to induce a waiver which they might not otherwise have gotten. In short, I find no bad faith on the part of the agents with regard to the time and place of the interview which they conducted with the accused on 14 September 1994.

I further find that when they met with the accused at the outset of the interview, both Special Agents Harris and Jacobson made attempts to ascertain by observing the accused's demeanor, behavior, conduct, and speech—they made efforts on the basis of those perceptions to ascertain the accused's condition and whether he was suitable for interview at that time, given the fact that this interview was taking place in a hospital compound.

I find that the accused, both at the outset and throughout the entire interview, displayed a condition which was apparently lucid and responsive, and displayed conduct which suggested to the agents that the accused was fully conscious of what he was doing and fully capable of understanding what was going on, and fully capable, therefore, of making an intelligent decision with regard to his waiver of his rights and any statement he might choose to make to the Naval Criminal Investigative Service.

Given their perceptions of the accused's apparently lucid and responsive condition and conduct, I find that it was objectively reasonable for Special Agents Harris and Jacobson to conclude on the basis of those perceptions that there was no need for further inquiry with any medical personnel as to the accused's condition.

I find that the accused was properly advised of his Article 31 rights before Special Agents Harris and Jacobson conducted any questioning on the 14th of September, and in particular I find that Special Agents Harris and Jacobson first informed the accused of the nature of the accusation, and they also advised him that he did not have to make any statement regarding the offense of which he was accused or suspected, and that they also advised him that any statement made by him could be used as evidence against him in a trial by court-martial.

———

Appellant asserts that his pretrial statements to two NCIS agents were involuntary because they were produced as a result of government manipulation and exploitation of his then severely weakened physical and mental state. He more particularly avers that it was an "offensive" police interrogation technique to purposefully question a seriously injured and doped up accused at a naval hospital without "consult[ing] with his doctor to determine his medication and cognitive abilities." Final Brief at 9. He relies heavily on the Supreme Court's decision in *Mincey v. Arizona*, 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), as authority for concluding that a confession produced by such coercive police conduct is both involuntary and inadmissible. *See also Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

■ We initially note that appellant predicates his "government overreaching" argument on facts that are contrary to or inconsistent with those found by the military judge. In particular, he asserts that the agents "knew he [appellant] would be weakened and afraid, and doped up just enough to get the confession they wanted." Final Brief at 8. The military judge, however, found as fact that these law enforcement investigators did not have knowledge of appellant's consumption of five to six pills of Tylenol including codeine. He also found that these investigators legitimately believed that appellant was mentally able to understand his rights and make a voluntary and intelligent decision to confess. As a court of law, we are not free to disregard such findings of fact by a judge when they are properly based on evidence in the record and are not clearly erroneous. *See generally United States v. Martinez*, 38 MJ 82, 85 (CMA 1993)(findings of fact pertinent to a motion to suppress on grounds of involuntariness will not be disturbed if supported by record); *United States v. Strozier*, 31 MJ 283, 287 (CMA 1990). These findings of fact are not clearly erroneous.

■ Admittedly, one portion of appellant's "overreaching" argument is supported by the record, *i.e.*, the admitted failure of police to contact his doctors before questioning him. However, whether it is "offensive" for a police officer to question an injured person under the circumstances of this case without inquiring of his doctor is an open question. Appellant proffers no particular legal support for this argument but generally cites *Mincey v. Arizona, supra.*

We have found no civilian law or police procedural rule prohibiting police from interrogating criminal suspects who are in a hospital because of injuries related or unrelated to a suspected crime. *See Lewis*, 833 F.2d at 1384–85. Moreover, a U.S. naval hospital is not and cannot be legally viewed as a sanctuary for criminals or persons suspected of crime. Finally, no military authority has been cited to this Court that requires military interrogators to "consult with appellant's physician to determine whether appellant was capable of speaking with them...." Final Brief at 7. In sum, appellant has not shown a statutory, regulatory, or military-case-law basis for holding that this police interrogation was illegal, unethical, or unfair. *See United States v. Bubonics*, 45 MJ 93, 97 (1996)(Sullivan, J., dissenting)(Mutt and Jeff techniques not illegal).

In addition, the Supreme Court's decisions cited by appellant do not establish this police conduct as illegal or a violation of due process. *See Colorado v. Connelly*, 479 U.S. 157, 163–64, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986). The military judge found that appellant, on his own initiative, sought out the

investigators once he learned that they were at the hospital looking for him. He also found that appellant was never arrested. *See Washington,* 46 MJ at 481–82. Moreover, the judge found that appellant was immediately advised of his rights by those investigators and that he indicated he understood those rights and waived them. *Id.* These findings are not clearly erroneous. Furthermore, the police conduct in this case, *some 5 weeks after the accident,* simply does not rise to the level of the outrageous government conduct considered in the cases cited by appellant. *Cf. Mincey,* 437 U.S. at 398–402, 98 S.Ct. 2408 (no rights given and accused immediately interrogated in hospital in immobile state); *Townsend v. Sain, supra* (heroin addict interrogated for 9 hours, went into withdrawal, injected with truth serum and other drugs by a doctor, then police obtained full confession); *Blackburn, supra* at 207, 80 S.Ct. 274 (insane and incompetent defendant interrogated for 8–9 hours in tiny room filled with police officers).

■ An additional question before us is whether appellant's mental state resulting from the pain of his injuries and the consumed painkillers rendered his pretrial statements involuntary.* This question arises because the military judge's ruling suggested that appellant was mentally impaired to some degree but disregarded that fact because any such impairment was self-induced. We note that the Supreme Court in *Colorado v. Connelly, supra,* has held that the mental condition of a person who confesses is not itself sufficient to establish a governmental due process violation. Instead, a mental impairment is a factor to be considered in determining the voluntariness of the challenged confession only if government overreaching is also shown. *See Watson v. Detella,* 122 F.3d 450, 453 (7th Cir.1997). Since the military judge's factual findings in this case do not support a legal conclusion of government overreaching or coercive police conduct, no further consideration of his mental impairment, if any, is warranted. *See Nickel v. Hannigan,* 97 F.3d 403, 410 (10th Cir.1996).

■ Finally, assuming some government overreaching was shown in this case, we still find appellant's confession voluntary. *See generally United States v. Sojfer,* 47 MJ 425, 429–30 (1998)(discussion of circumstances showing voluntariness); *cf. United States v. Bubonics* and *United States v. Martinez,* both *supra.* The record does show some possibility of mental befuddlement on appellant's part at the time of his confession. However, other evidence in this case, including testimony of CDR Bloom on the lack of impact of codeine on a person's will, shows that appellant was capable of making an essentially free and unconstrained choice to confess and that he did so. *See United States v. Washington, supra; see generally Culombe v. Connecticut,* 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961). Federal civilian case law supports our conclusion that appellant's confession was voluntary in these circumstances. *See Boggs v. Bair,* 892 F.2d 1193, 1199 (4th Cir.1989)(defendant's confession is not inadmissible unless he was "so intoxicated that his will was overborne"); *Lewis,* 833 F.2d at 1384–85 (statement voluntary even though defendant recently returned from surgery, was in pain, and recently received anesthetic); *United States v. Martin,* 781 F.2d 671, 673–74 (9th Cir.1985)(voluntary statement of defendant on Demerol and still in pain). Accordingly, appellant's claim that his confession was involuntary must be rejected. *See generally United States v. D.F.,* 115 F.3d 413, 417–19 (7th Cir.1997)(applying *de novo* review standard of *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), to appellate review of voluntariness of a confession).

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.

---

* The defense has not challenged the validity of appellant's waiver of his Article 31, Uniform Code of Military Justice, 10 USC § 831, rights on grounds of mental impairment. We need not decide today whether a mentally impaired person can waive his or her rights under Article 31.